IRVING, P.J.,
for the Court:
¶ 1. Elizabeth Martin sued St. Dominic-Jackson Memorial Hospital for injuries that she received in a slip-and-fall accident on the hospital’s premises. At the conclusion of the evidence, the hospital, arguing that Martin had failed to prove causation, moved for a directed verdict. The circuit court agreed and granted the hospital’s motion. Aggrieved, Martin appeals and essentially argues that she presented enough evidence regarding the hospital’s alleged negligence and causation to withstand the motion for a directed verdict.
¶ 2. We agree with Martin that, based on the evidence presented, the jury should have been allowed to determine whether the hospital was negligent and, if so, whether her injuries were proximately caused by the hospital’s negligence. Therefore, we reverse and remand for a new trial on the merits.
FACTS
¶ 8. On September 27, 2005, Martin slipped and fell, on both knees, on a freshly waxed floor at St. Dominic-Jackson Memorial Hospital during a break in a physical-therapy session that Martin was participating in while a patient at the hospital. According to testimony adduced by the hospital, warning signs had been placed in the area where Martin fell, and Martin and the other participants in the therapy session had been specifically warned to avoid the freshly waxed area. Martin testified that there were no warning signs and that she had not been warned by the hospital’s personnel to avoid the area where the fall occurred. In any event, it is undisputed that Martin injured her knees and suffered some damages as a result of her fall. Her knees became swollen, and she was hospitalized overnight and instructed to keep her legs elevated and to use ice packs for the swelling. She was discharged from the hospital the following day and given a prescription for pain medication.
¶ 4. After Martin was discharged from the hospital, her knees continued to swell, resulting in her seeing her family physician, Dr. Brent Meador. Dr. Meador had an MRI done of Martin’s knees, and eventually referred her to Dr. David Gandy. The MRI showed that Martin had a trabe-cular injury, which is a bruise to the bone, that normally occurs, according to Dr. Gandy, “from some type of direct blow to the knee.” The MRI also showed that Martin had a mild ACL sprain. Dr. Gan-dy explained: “An ACL is an anterior cruciate ligament. That’s one of the two cross ligaments within the knee, and most people hear [about] those in football[-]type injuries, things like that, and it was a mild sprain. It was not a tear or not a major injury.” The MRI also showed “some mild marrow edema in the distal femur and proximal tibia.” Dr. Gandy explained: “Edema is swelling anywhere, but in this case within the bone marrow, and [the radiologist] thought it could be due to the recent fall or to arthritis.”
¶ 5. When Martin came to see Dr. Gan-dy, she gave him a history of having pain in her left knee for approximately two years, but she explained that she had just started having pain in her right knee. According to Dr. Gandy: “She had pain -with motion[,] and she had pain with stress to various environments, which means pulling the knee in and pulling the knee out, holding the thigh stable.” She advised Dr. Gandy that she had fallen approximately two months earlier.
¶ 6. Dr. Gandy performed arthroscopic surgery on Martin’s left knee. The surgery revealed that she had arthritis and a medial and lateral meniscus tear in the left knee. He gave the following explanation regarding a meniscus tear:
*72 A meniscus is a disc[-]shaped structure. There are two of them within the knee. The medial being on the inner side of the knee and lateral on the outer side of the knee. Their purpose is as a secondary stabilizer. They’re not the primary stabilizer like the ligaments are. They prevent more of a side[-]to[-] side kind of gliding motion in the knee. They kind of deepen the socket, and if they are torn, which can occur in a younger person, generally it’s from a twisting maneuver. In a person a bit older, it can be from either wear and tear or an injury, either one.
(Emphasis added).
¶ 7. Additional facts, as necessary, will be related during our discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. We review the circuit court’s grant or denial of a motion for a directed verdict de novo. Ryals v. Bertucci, 26 So.3d 1090, 1094 (¶ 16) (Miss.Ct.App.2009). We review the evidence presented in the light most favorable to the nonmoving party and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. If the evidence presented creates a question of fact upon which reasonable minds could differ, a directed verdict should not be granted; instead, the issue should be submitted to the jury. Ross v. Nat’l Forms & Sys. Group, Inc., 882 So.2d 245, 249 (¶ 11) (Miss.CtApp.2004) (quoting Ducksworth v. Wal-Mart Stores, Inc., 832 So.2d 1260, 1262 (¶ 2) (Miss.Ct.App.2002)). “A question of fact is created if ‘one party swears to one version of the matter in issue and another says the opposite....’” Id. at 250 (¶ 16) (quoting Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 99 (Miss.1996)).
¶ 9. In order to recover against St. Dominic, Martin is required to prove that the hospital owed her a duty, that the hospital breached that duty, that her injuries were caused by that breach, and that she suffered damages as a result. Mladineo v. Schmidt, 52 So.3d 1154, 1162 (¶ 28) (Miss.2010). Also, in slip-and-fall cases, such as we have here, the duty owed by a business is to use reasonable and ordinary care to keep its premises reasonably safe for use by its customers and to warn them of any existing dangerous condition not readily apparent that is known to the business, or should have been known to it in the exercise of reasonable care. Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1199-1200 (¶ 5) (Miss.2008).
¶ 10. The evidence is undisputed that Martin fell on a freshly waxed floor at the hospital while she was a patient there. Therefore, as an invitee of the hospital, the hospital had a duty to warn her of the freshly waxed floor, which could be unusually slippery.
¶ 11. During the trial, Martin testified that she was not warned by the nurses to avoid the area and that there were no warning or caution signs. Conversely, the hospital’s staff testified that all of the patients were warned to avoid the area being waxed and that caution signs were placed around the area. The testimony presented in this case created a question of fact as to whether the hospital failed to warn Martin of the dangerous condition. Even if the evidence is slight, whether a breach of duty occurred is a question that should be determined by the jury. Hankins Lumber Co. v. Moore, 774 So.2d 459, 464 (¶ 11) (Miss.Ct.App.2000).
¶ 12. There was no dispute as to any of the other elements that Martin had to prove except causation. It is clear that Martin suffered damages. The question is whether Martin produced sufficient credi *73 ble evidence that created a question of fact upon which reasonable minds could differ. If she did, a directed verdict should not have been granted, and the case should have been presented to a jury to abide the jury’s verdict on that question. The circuit court adopted the hospital’s argument that Martin had “failed to present any testimony or evidence by a physician or expert to a reasonable degree of medical certainty that the [hospital’s] alleged negligence proximately caused [Martin’s] damages.” Relying on Kidd v. McRae’s Stores Partnership, 951 So.2d 622 (Miss.Ct.App. 2007), the circuit court concluded that, on the evidence presented, the jury could not use the medical evidence presented to reach a verdict. We find that the facts here are quite different from the facts in Kidd. In Kidd, the circuit court did not allow evidence of future medicals where the physician never testified as to the future need for two surgeries. Id. at 623 (¶ 5). The issue here is not the exclusion of evidence because of a lack of medical basis, but the submission of the issues of negligence and causation to the jury based on the medical evidence presented. It is in the province of the jury to determine the cause of Martin’s injuries, not the circuit court. As noted, our inquiry must be whether there was credible evidence that created a question of fact upon which reasonable minds could differ as to the cause of Martin’s injuries. It is clear that the answer is an emphatic “yes.”
¶ 13. First, there is overwhelming and uncontradicted evidence that Martin’s fall was caused by the slippery, freshly waxed floor at the hospital. Second, the evidence is uncontradicted that Martin landed on both of her knees and that they immediately began to swell, necessitating utilization of ice packs, an overnight stay in the hospital, and pain medication. It is also undisputed that when she underwent an MRI a few days after the fall, it showed a mild ACL sprain, the kind that is quite often suffered by athletes in the contact sport of football, and edema in the bone marrow. We find that on these facts, reasonable minds could not even differ as to whether some of Martin’s injuries were caused by her fall at the hospital, leaving the only remaining question to be whether the hospital breached its duty to Martin. And on this point, our law is clear that this is a classic question for the jury since the evidence is conflicting.
¶ 14. The more difficult question is whether the edema in the bone marrow of Martin’s knee and the meniscus tear were caused by Martin’s fall or by the normal wear and tear that occurs as a result of the aging process and the progression of arthritis in the body.[1] The medical evidence on this point, as given by Dr. Gandy, is that the tear was caused by “wear and tear or an injury, either one.” As to the edema, the radiologist that read the MRI, according to Dr. Gandy, believed the edema was due to the recent fall or to arthritis. While Dr. Gandy did not state that the meniscus tear was caused by Martin’s fall, it is noteworthy that he did not say that the tear could not have been caused by the fall or that there is no medical evidence supporting the notion that a meniscus tear can occur when one falls directly on the knee. Suppose instead of one physician testifying that the tear was caused by either arthritis conditions or by the blow to the knee from the fall, there had been two physicians, one testifying on behalf of Martin and the other testifying on behalf of the hospital. Suppose further that Martin’s expert had testified that the meniscus tear was caused by the blow to the knee from the fall while the hospital’s *74 expert had testified that the tear was caused by the progression of Martin’s arthritis. Could it be legitimately argued that the matter should not be presented to the jury for resolution of the question? How then is the legal implication different because one expert said both? It is certainly reasonable that the jury could have decided that the cause was the impact to the knee from the fall, rather than the progression of Martin’s arthritis. This is also a classic situation where the evidence creates a question of fact — whether the edema and meniscus tear were caused by the wear and tear of the aging process, arthritis, or by the injury to the knee from the fall. Reasonable minds could differ as to the cause, but not because of a lack of medical evidence to support the choice made. That is so because Martin suffered from arthritis as well as from the fall on both of her knees. A jury might very well determine, based on the fact that Martin had suffered from arthritis since 2004, that the tear occurred as a result of this condition. On the other hand, a jury might determine, based on Martin’s testimony without objection that she had never had this kind of problem before, that the tear occurred as a result of the acute impact to her knee from the fall. Therefore, since reasonable minds could reach different conclusions as to the cause of her meniscus tear, the circuit court erred in directing a verdict for the hospital. We find that the jury should have been allowed to make that determination based upon the totality of the evidence presented.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., GRIFFIS, P.J., AND CARLTON, J. CONCUR. ROBERTS AND MAXWELL, JJ„ CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS AND BARNES, JJ. RUSSELL, J., NOT PARTICIPATING.

. At the time of Martin's arthroscopic surgery, she was fifty-six years old.