PIERCE, Justice,
for the Court:
¶ 1. While attending a group-therapy session at St. Dominic’s Hospital (“SDH”) on September 27, 2005, Elizabeth Martin slipped and fell on a floor while it was being waxed. She alleged she received injury to both knees. Martin sued SDH for negligence regarding her injuries allegedly caused by the fall. At the conclusion of the trial, SDH moved for a directed verdict, claiming that Martin had not provided sufficient evidence to establish the proximate cause of her injury. The Circuit Court for the First Judicial District of Hinds County granted SDH’s motion for a directed verdict, and Martin timely filed an appeal. The Court of Appeals reversed the decision of the circuit court and re *45 manded the case for a new trial, finding that Martin had provided enough evidence to create a question of fact for the jury to make a determination based on the totality of the evidence. We disagree and find that the circuit court correctly granted SDH’s motion for a directed verdict.
FACTS AND PROCEDURAL HISTORY
¶ 2. The following facts are gleaned from the Court of Appeals opinion and the testimony and evidence presented at trial. On September 27, 2005, Martin slipped and fell on both knees on a floor while it was being waxed at SDH during a break in a physical-therapy session that Martin was participating in while a patient at SDH. According to testimony adduced by SDH, Martin and the other participants in the therapy session had been specifically warned to avoid the hallway because Environmental Services (i.e. Housekeeping) had begun to prepare the floor to be waxed; warning signs had been placed in the area being waxed; and Martin slipped and fell as she passed the custodian who was waxing the floor. Martin testified that there were no warning signs and that she had not been warned by the hospital’s personnel to avoid the area where the fall occurred.
¶ 3. It is undisputed that Martin fell. Martin alleged that she suffered some swelling at least a day after the fall. Martin, already a patient at SDH before the fall and going home the next day, remained hospitalized overnight. She was discharged from the hospital the following day and given a prescription for pain.
¶ 4. After Martin was discharged from the hospital, she claimed that her knee, without saying which one, continued to swell, causing her to see her family physician, Dr. Brent Meador. Martin testified that “after I had left St. Dominic, I began to have swelling in the knee.” Martin never testified to the extent of injuries in her right knee, but she did testify that when she went to see Dr. Meador after the fall, she thought her problems stemmed from her arthritis, with which she had been diagnosed in 2004. Because Dr. Meador did not know the cause of Martin’s ailments, he ordered magnetic resonance imaging (“MRI”) of Martin’s left knee. Dr. Meador also ordered an x-ray of Martin’s right knee, and thereafter, he referred Martin to Dr. David Gandy.
¶ 5. Dr. Gandy saw Martin about two months after she fell, and he testified[1] that Martin had explained in a form she filled out, that the cause of her pain stemmed from a fall that had aggravated and intensified an existing problem. Dr. Gandy reviewed Martin’s MRI, showing that Martin had a trabecular injury, which is a bruise to the bone that normally would occur, according to Dr. Gandy, “from some type of direct blow to the knee.” The MRI also showed that Martin had a mild ACL sprain. Dr. Gandy explained: “An ACL is an anterior cruciate ligament. That’s one of the two cross ligaments within the knee, and most people hear [about] those in football[-]type injuries, things like that, and it was a mild sprain. It was not a tear or not a major injury.” The MRI also showed “a small joint effusion, meaning some small amount of fluid in the knee, and then there’s some mild marrow edema in the distal femur and proximal tibia.” Dr. Gandy explained that “[e]dema is swelling anywhere, but in this case within the bone marrow, and [the radiologist] *46 thought it could be due to the recent fall or to arthritis.” As far as the right knee is concerned, Dr. Gandy reviewed the x-ray, which “showed moderate osteoarthritis in the right knee with no acute abnormality seen.”
¶ 6. “In his initial diagnosis, Dr. Gandy determined that Martin had internal derangement, which means that something is wrong inside the knee, but she primarily had arthritis in both knees.”[2] As Dr. Gandy began to treat Martin, he based her treatment on the MRI and an x-ray ordered by Dr. Meador, Martin’s medical history, and his own examination. Dr. Gandy testified that Martin complained of pain in both knees, with the pain in her left knee having existed “for about two years” and pain in her right knee being a result of a direct blow from the fall she had two months prior. According to Dr. Gandy, Martin “had pain with motion[,] and she had pain with stress to various environments, which means pulling the knee in and pulling the knee out, holding the thigh stable. Dr. Gandy informed Martin that she had three options: 1) bracing the knee; 2) injections to the knee; or 3) considering arthroscopic surgery. Martin chose to undergo arthroscopic surgery to her left knee. No treatment options were given for any problems with the right knee.
¶ 7. The surgery revealed that Martin had arthritis and medial and lateral meniscus tears in the left knee. Dr. Gandy gave the following explanation regarding the meniscus tears:
A meniscus is a disc[-]shaped structure. There are two of them within the knee. The medial being on the inner side of the knee and lateral on the outer side of the knee. Their purpose is as a secondary stabilizer. They’re not the primary stabilizer like the ligaments are. They prevent more of a side[-]to[-] side kind of gliding motion in the knee. They kind of deepen the socket, and if they are torn, which can occur in a younger person, generally it’s from a twisting maneuver. In a person a bit older, it can be from either wear and tear or an injury, either one.
At Martin’s followup visit on December 28, 2005, Dr. Gandy explained to her that the cause of her meniscus tears was “from wear and tear or from an acute injury.”
¶ 8. At trial, Martin testified that, because of the fall at SDH, she had sustained both monetary and hedonic damages. She testified that she had bills from: Dr. Meador in the amount of $2,422; Sports Medicine South for $1,918; St. Dominic Ambulatory for $3,228; and from Jackson Orthopedic Clinic for various reasons in the amount of $5,942.40. Thus, Martin had acquired a total of $13,510.40 in expenses from seeing Dr. Meador and Dr. Gandy and electing to undergo arthroscopic surgery. Martin also claimed she had incurred hedonic damages in that she: missed college football games; could not exercise; could not be active with her grandchildren; and was late to or missed church. In addition, Martin claimed she had missed six weeks’ worth of work, but did not lose any income.
¶ 9. At the close of trial, SDH renewed its motion for a directed verdict ore tenus, asserting that Martin had failed to present testimony or evidence that the alleged negligence proximately caused her damages. Specifically, SDH reasoned that Martin did not present any testimony or evidence by a physician or expert to a reasonable degree *47 of medical certainty that SDH’s alleged negligence had caused Martin’s damages. In fact, SDH stressed the fact that Martin had never asked Dr. Gandy what had caused her injuries. In response, Martin’s trial counsel urged that the mere existence of her injuries was sufficient to support her damages, and he also stated that, “[i]n order to satisfy our burden, we don’t have to put on an expert that says with 100 percent certainty this is what caused this injury.” Further, counsel argued that “the proximate cause is so obvious.” But the circuit court reminded trial counsel that it had asked “what specific medical testimony there was of proximate causation by a medical doctor relating to this accident and this particular injury.” Then, the circuit court stated that it had never received a sufficient answer and then agreed with SDH, finding the jury could not rely upon the medical opinion of Dr. Gandy, because his testimony was speculative and insufficient to support an award of damages. As a result, the circuit court granted SDH a directed verdict, because Martin had not provided “any evidence based upon a reasonable degree of medical certainty to support her alleged damages.”
¶ 10. Aggrieved, Martin appealed, seeking “reimbursement for her medical expenses associated with treatment by her primary physician, treatment by Dr. Gan-dy and the costs of arthroscopic surgery, and continued treatment through rehabilitation with Sports Medicine South.” And on appeal, the Court of Appeals reversed the circuit court and found this case to be a “classic situation where the evidence creates a question of fact — whether the edema and meniscus tear[s] were caused by the wear and tear of the aging process or by the injury to the knee from the fall.”[3] The Court of Appeals dismissed the circuit court’s finding that the testimony of Dr. Gandy was speculative and insufficient, and opined that the evidence presented created a question of fact upon which reasonable minds could differ as to the cause of Martin’s injuries. Moreover, the Court of Appeals determined that “on these facts, reasonable minds could not even differ as to whether some of Martin’s injuries were caused by the fall at the hospital, leaving the only remaining question to be whether the hospital breached its duty to Martin.”[4] The Court of Appeals gave a hypothetical to support its reasoning, comparing this case to one in which two testifying experts testified with differing opinions.[5] Judge Ishee dissented, believing that Martin “did not provide enough evidence for a jury to determine that Martin’s injuries were proximately caused by her fall at St. Dominic.”[6]
¶ 11. SDH filed a motion for rehearing, but the Court of Appeals denied that motion on September 19, 2011.[7] SDH then petitioned this Court for a writ of certiora-ri, which was granted on December 15, 2011. On writ of certiorari, the issue is whether the Court of Appeals erred in holding' that a plaintiff need only present evidence that a defendant may have caused the plaintiffs medical injury in order to withstand a motion for a directed verdict.
STANDARD OF REVIEW
¶ 12. The standard of review for a directed verdict is de novo.[8] “This Court *48 will consider the evidence in the light most favorable to the appellee, giving the party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence.”[9] “If we find that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.”[10]
ANALYSIS
¶ 13. The sole issue before this Court is whether the Court of Appeals erred in finding that Martin had presented sufficient evidence to withstand a motion for a directed verdict. The Court of Appeals found that Martin had produced sufficient credible evidence that created a question of fact, and thus, a directed verdict should not have been granted. However, “an essential part of the claim in a personal tort case is to demonstrate, not only the extent of the injury, but [also] that the negligence of the defendant was the proximate cause of the injury.”[11] Further, “[t]his Court requires that in order to incur liability when a party is negligent, that negligence also must be the proximate cause of the injury.”[12] “In order for an act of negligence to proximately cause the damage, the fact finder must find that negligence was both the cause in fact and legal cause of the damage.” [13]
¶ 14. Here, the circuit court concentrated on the cause-in-fact element.[14] This Court has defined cause-in-fact as:
but for the defendant’s negligence, the injury would not have occurred. Stated differently, the cause in fact of an injury is that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred.[15]
Martin attempted to prove that SDH’s actions were the proximate cause of her injuries through the testimony of Dr. Gandy. However, SDH contends that Dr. Gandy did not testify to a reasonable degree of medical certainty that Martin’s knee injuries were caused by her fall. “In this case, the trial court’s ruling focused on the cause-in-fact element, which means that the injury would not have occurred but for the defendant’s negligence.” [16]
¶ 15. Mississippi jurisprudence does not require medical testimony to contain any magical words, but medical testimony is not probative unless it speaks in terms of probabilities rather than possibilities.[17] “As this Court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a *49 probability....”[18] However, “some speculation in medical matters is allowable and necessary.”[19] “Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision.”[20]
¶ 16. Dr. Gandy testified that, in older individuals like Martin, the injuries she sustained were from either wear and tear or an injury. Further, Dr. Gandy informed Martin that her injuries were from either wear and tear or an injury. The record is void of any assertion from any medical expert that Martin’s injuries were related to her fall at SDH or were an aggravation of a preexisting condition. In fact, Martin’s trial counsel never asked the question. Martin’s evidence and testimony presented at trial simply show that either her arthritis or the fall caused her injury in the left knee. Martin failed to provide testimony of the damages, if any, associated with her right knee, and instead concentrated on the damages she sustained as a result of the alleged injury to her left knee. The evidence presented at trial shows that Martin had experienced pain in the knee operated on two years prior to the fall. Dr. Gandy testified that Martin had informed him of pain in both knees, with the pain in her left knee existing “for about two years” and pain in her right knee as a result of a direct blow from the fall she had two months prior, yet that is the only testimony that addressed Martin’s right knee. “Dr. Gandy did not opine as to whether Martin’s fall at the hospital actually caused or contributed to her injuries, thus leaving the jury to speculate as to causation.”[21] Although absolutes are not required in medical-expert testimony, Dr. Gandy’s statements do not equate to an opinion of sufficient certainty for a jury to draw a conclusion.[22]
¶ 17. The Court of Appeals used a hypothetical to explain how Dr. Gandy’s opinion should be treated as two different opinions from two different medical experts:
Suppose instead of one physician testifying that the tear was caused by either arthritis conditions or by the blow to the knee from the fall, there had been two physicians, one testifying on behalf of Martin and the other testifying on behalf of the hospital. Suppose further that Martin’s expert had testified that the meniscus tear was caused by the blow to the knee from the fall while the hospital’s expert had testified that the tear was caused by the progression of Martin’s arthritis. Could it be legitimately argued that the matter should not be presented to the jury for resolution of the question? How then is the legal implication different because one expert said both?[23]
If two different opinions from two different medical experts were proffered, this case would not be on appeal. In that hypothetical, one doctor opines one set of facts for causation and second doctor a competing opinion. At that point, no one *50 but the jury can determine that issue. However, that situation is not what is before this Court. Here, a medical expert, Dr. Gandy, testified that Martin’s injuries were the result of either wear and tear or an injury. Neither he nor anyone else gave a competing diagnosis. Therefore, a directed verdict was proper, because Dr. Gandy’s opinion did not rise to a reasonable degree of medical certainty.
¶ 18. Although Martin’s counsel argued that Martin’s injuries alone were sufficient to support her damages and that Martin was not required to have an expert testify with certainty as to the cause of her injuries, proximate cause requires more than speculation, guesswork, conjecture, or inferences. The law requires probability, not an assumption that the fall Martin experienced at SDH proximately caused injury to support her damage claims.
CONCLUSION
¶ 19. The circuit court did not err in this case. The directed verdict granted was proper, because the evidence provided by Martin did not rise to a reasonable degree of medical certainty. Therefore, the decision of the Court of Appeals is reversed, and the decision of the circuit court is reinstated and affirmed.
f 20. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.
WALLER, C.J., CARLSON, P.J., AND RANDOLPH, J., CONCUR. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KITCHEN, J. CHANDLER AND KING, JJ., NOT PARTICIPATING.

. Dr. Gandy testified by video because he was unavailable for trial due to his surgery schedule.

. Martin v. St. Dominic-Jackson Mem’l Hosp., 90 So.3d 70, 75 (Miss.Ct.App.2011) (Ishee, J. dissenting).

. Martin, 90 So.3d at 74.

. Id.

.Id.

. Id. at 74 (Ishee, J., dissenting).

. Martin v. St. Dominic-Jackson Mem'l Hosp., 90 So.3d 70 (Miss.Ct.App.2011), cert. granted, 76 So.3d 169 (Miss.2011).

. Kennedy v. Illinois Cent. R.R. Co., 30 So.3d 333, 335 (Miss.2010).

. InTown Lessee Assocs., LLC v. Howard, 67 So.3d 711, 718 (Miss.2011) (citing Spotlite Skating Rink, Inc. v. Barnes, 988 So.2d 364, 368 (Miss.2008)).

. Kennedy, 30 So.3d at 335.

. Busick v. St. John, 856 So.2d 304, 307 (Miss.2003).

. Utz v. Running and Rolling Trucking, Inc., 32 So.3d 450, 466 (Miss.2010).

. Glover v. Jackson State Univ., 968 So.2d 1267, 1277 (Miss.2007).

. See Martin, 90 So.3d at 74.

. Glover, 968 So.2d at 1277.

. Martin, 90 So.3d at 74.

. Pittman v. Hodges, 462 So.2d 330, 333-34 (Miss.1984).

. Twin County Elec. Power Ass’n v. McKenzie, 823 So.2d 464, 472 (Miss. 2002) (citing Elsworth v. Glindmeyer, 234 So.2d 312, 319 (Miss. 1970)).

. Pittman, 462 So.2d at 334.

. Catchings v. State, 684 So.2d 591, 597 (Miss. 1996).

. Martin, 90 So.3d at 76.

. Id.

. Martin, 90 So.3d at 74.