LAMAR, Justice,
for the Court:
¶ 1. Following a motor-vehicle accident, Virgil Burcham sued Edward Miles’s estate for negligence and negligence per se. Burcham received a $60,000 judgment, from which the Miles estate appeals. We affirm the judgment as to liability, subject to remittitur.
FACTS AND PROCEDURAL HISTORY
¶ 2. On November 3, 2005, Edward Miles drove his pickup truck into an intersection in front of Virgil Burcham’s eighteen-wheel fuel truck.[1] Miles was transported by helicopter to the Regional *217 Medical Center in Memphis, where he died several hours later.[2] At the accident scene, Burcham complained of minor back pain but drove himself home after his boss, Danny Jumper, gave him a ride to his personal vehicle.
¶ 3. The next day, Burcham informed Jumper that his back pain had increased and that he needed to see a doctor. During this conversation, Burcham first learned that Miles had died. Burcham was traumatized by the news and asked Jumper to find someone else to haul fuel. Jumper could not find a replacement, and Burcham resumed hauling fuel a week later. During the next six months, Burcham was nervous and often cried while driving. He also lost control of his bowels several times. Despite his emotional distress, Burcham continued to haul fuel but did not unload it due to his back injury.
¶ 4. Nineteen days after the accident, Burcham went to see Dr. Joseph Putnam with complainants of increased constipation, lack of bowel control, and blood in his stool. Dr. Putnam ordered a colonoscopy, which identified divertieulosis,[3] and not the accident, as the cause of Burcham’s issues. For his emotional distress, Burcham went to see Dr. Joe Ed Morris and was diagnosed with post-traumatic stress disorder. Dr. Morris referred Burcham to Timber Hills, a regional mental facility, where Burcham was treated on an outpatient basis by Dr. Atsuko Ishikawa. Burcham’s conditions improved, and he continued to haul fuel until he retired in 2006.
¶ 5. Burcham sued the Miles estate for negligence and negligence per se, and a jury awarded him $60,000.[4] The Miles estate appeals from the judgment, raising six issues:
I. Did the trial court err by failing to exclude Burcham’s emotional-distress claims?
II. Did the trial court err by failing to exclude Burcham’s colonoscopy-re-lated medical expenses?
III. Did the trial court err by giving flawed and incomplete jury instructions?
IV. Did the trial court err by excluding Officer Mathis’s testimony regarding Burcham’s prior accident?
V. Is the jury’s verdict unsustainable?
VI. Did the trial court err by setting a six percent post-judgment interest rate?
LAW AND ANALYSIS
I. Emotional Distress
¶ 6. The crux of this appeal is whether Burcham’s emotional distress was a reasonably foreseeable injury and therefore a recoverable category of damages.[5] For purposes of foreseeability, emotional-distress plaintiffs are divided into two categories: participants and bystanders. Participants are directly involved in the causal event, and the foreseeability of their emotional-distress claims is analyzed like *218 any other damages claim.[6] Bystanders merely observe the causal event, and the foreseeability of their emotional-distress claims is determined by analyzing the three Dillon factors, which are:
1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.
3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.[7]
¶ 7. The parties dispute Burcham’s classification because his emotional distress was caused by two events: the accident and the subsequent knowledge of Miles’s death. Burcham claims that his involvement in the accident makes him a participant, while the Miles estate claims that his trauma stemmed from Miles’s death, not the accident, and therefore, this should be analyzed as a bystander claim. We agree with Burcham.
¶ 8. Emotional distress is a reasonably foreseeable injury to a car-accident participant, therefore Burcham was entitled to such damages so long as he proved they were in fact caused by Miles’s negligence.[8] It was undisputed at trial that, at the intersection where the accident occurred, Miles had a stop sign and Burc-ham had a flashing yellow caution light. As such, Burcham had the right of way, and Miles breached his duty to yield when he pulled out in front of him. This breach caused the accident between the parties. The question then became whether the accident caused Burcham’s emotional distress. The testimony of several witnesses supports the jury’s finding that it did. Specifically, Jumper testified that when he arrived at the accident scene Burcham was rattled, rambling, pale, “shaking like a leaf,” and “a basket case.” Similarly, Dr. Morris testified that Burcham’s post-traumatic stress disorder was caused by his involvement in the fatal accident. Since Miles negligently caused the accident that caused Burcham’s emotional distress, and since emotional distress is a reasonably foreseeable injury to a car-accident participant, the trial court did not err by submitting this claim to the jury. This issue is without merit.
II. Medical Expenses
¶ 9. In addition to emotional-distress damages, Burcham sought to recover the cost of a colonoscopy and other related procedures. In order to recover these expenses, Burcham had to prove that they were “necessary and reasonable” medical expenses resulting from the accident with Miles.[9]
¶ 10. Nineteen days after the accident, Burcham went to see Dr. Putnam with a variety of complaints including increased constipation, lack of bowel control — particularly when driving his fuel truck — and *219 blood in his stool. Dr. Putnam ordered Burcham a colonoscopy to determine the cause of the blood in his stool. One potential cause was an injury sustained in the accident. Dr. Putnam testified that he could not rule out the accident as a cause without a diagnostic test-a colonoscopy. But the colonoscopy revealed that Burc-ham’s condition was caused by diverticulo-sis, not the accident. This procedure also revealed several small polyps in Burcham’s colon, which were removed and biopsied. Burcham sought to recover the cost of the colonoscopy and the polyp procedures. By presenting the bills to the trial court and testifying that they were incurred as a result of the accident, Burcham made a prima facie case that the bills were “necessary and reasonable” expenses.[10] We address separately the damages for the colo-noscopy and the polyp procedures.
A. Colonoscopy
¶ 11. The Miles estate claims that the cost of Burcham’s colonoscopy was erroneously admitted because “the test was not performed because of the accident” and “Burcham’s medical condition was not medically related to the accident.” Burc-ham argues that the colonoscopy was a “necessary and reasonable” diagnostic test, the cost of which is recoverable regardless of its results.
¶ 12. We have not found a case, nor have the parties cited one, in which this Court has addressed the specific issue of whether a plaintiff may recover damages for diagnostic examinations in the absence of evidence of physical injury related to a defendant’s negligence. The Miles estate mistakenly relies on Martin v. St. Dominic-Jackson Memorial Hospital, 90 So.3d 43 (Miss.2012), to argue that the cost of such a procedure is unrecoverable. In Martin, we held that the defendant was entitled to a directed verdict because the plaintiff had failed to establish the defendant’s negligence was the proximate cause of her injury.[11] We did not directly address whether a plaintiff can recover the cost of a diagnostic procedure if the procedure eliminates, as opposed to implicates, a defendant’s negligence as an injury’s cause. Today, we hold that the cost of a diagnostic procedure is recoverable, regardless of its results, so long as it is found to be a “necessary and reasonable” expense related to a defendant’s negligence.
¶ 13. Accordingly, even in the absence of physical injury, Burcham should be able to recover the costs of diagnostic examinations which are a “necessary and reasonable” expense caused by Miles’s negligence. “The need for diagnostic examinations, of course, must be supported by the testimony of competent medical experts.”[12] Here, Burcham’s need for the diagnostic examination — the colonoscopy— was shown through the testimony of Dr. Putnam. Because the accident could not be eliminated as the cause of Burcham’s condition without the colonoscopy, we cannot say that the trial court erred in finding that the colonoscopy was a “necessary and reasonable” diagnostic procedure resulting from the accident. As such, the trial court did not err by allowing Burcham to submit these damages as a medical expense.
B. Polyp Procedures
¶ 14. The Miles estate separately attacks $1,080 in medical bills incurred for the removal and testing of polyps, alleging *220 those procedures clearly were not accident-related. We agree. Because we find those bills were not “necessary and reasonable” medical expenses resulting from the accident, it was error to submit such bills to the jury, and an offsetting remitti-tur is required.[13] If Burcham does not accept the necessary $1,080 remittitur, a new trial on damages will be necessary.
III. Jury Instructions
¶ 15. In addition to the damages awarded, the Miles estate challenges the jury instructions on three issues. When considering a jury-instruction challenge, the instructions are “read together as a whole, and so long as they fairly state the law of the case and create no injustice, no reversible error exists.”[14] Additionally, a jury instruction cannot be given unless there is an evidentiary basis for it.[15]
A. Emotional Distress
¶ 16. The Miles estate claims that the trial court improperly refused instruction D-15, which correctly explained when a bystander can recover emotional-distress damages. The trial court refused the “bystander instruction” because it had correctly classified Burcham as a participant. The trial court did not err by refusing to give instruction D-15.[16] This issue is without merit.
¶ 17; The Miles estate also challenges the trial court’s edits to instruction D-15R. D-15R was given as an alternative to instruction D-15 and initially stated:
In this case, Plaintiff seeks an award of damages for emotional distress resulting from Plaintiffs learning of Edward Miles’ death at some time after the automobile accident. You are instructed that you may only award damages for the plaintiffs mental suffering if the plaintiff proves, by a preponderance of the evidence, that:
1. the [P]laintiff has suffered some sort of demonstrative harm or injury; and
2. that Plaintiffs emotional distress was reasonably foreseeable to Edward Miles, Deceased.

In order to determine if Plaintiffs claim of emotional distress was reasonably foreseeable to Edward Miles, Deceased, the Court instructs you to consider the following factors:

1. whether Plaintiff was located near the scene of Mr. Miles’ death;

2. whether Plaintiffs emotional distress resulted from a direct emotional impact upon Plaintiff from the sensory and contemporaneous observance of Mr. Miles’death; and

3. whether Plaintiff and Mr. Miles were closely related.

Therefore, if the Plaintiff fails to prove to you that he has suffered some *221 sort of demonstrative harm or injury and that Plaintiffs emotional distress was reasonably foreseeable, by a preponderance of the evidence, then you must not award Plaintiff any damages for emotional distress.
However, if you find that the Plaintiff has proven these factors, by a preponderance of the evidence, then you must award such damages, if any, as you deem reasonable to the plaintiff.
The trial court gave instruction D-15R but eliminated the portion italicized above. The Miles estate argues that the original version correctly stated the law and that the amended version was misleading and confusing. We disagree. Like D-15, the original version of D-15R was a bystander instruction and was properly refused.[17] D-15R was properly edited to reflect the trial court’s correct classification of Burc-ham as a participant. This issue is without merit.
B. Comparative Fault
¶ 18. The Miles estate wanted to instruct the jury on several theories of comparative negligence by alleging Burcham contributed to the accident by failing to: 1) obey a caution light, 2) yield, and 3) blow his horn. We address separately each instruction.
1. Caution Light
¶ 19. The Miles estate faults the trial court for refusing instruction D-9, which read:
You are instructed that a flashing yellow or amber light facing a motorist at an intersection imposes on him or her the duty of proceeding into the intersection with caution and at a reasonable speed, and of maintaining a careful lookout for other vehicles. You are further instructed that no driver of a vehicle is permitted to disobey the instruction of any official traffic-control device, unless at the time otherwise directed by a police officer.
In this case, there was a flashing yellow or amber light facing Plaintiff Virgil Burcham above the intersection of Highway 72 and Highway 7 at the time of the automobile accident at issue. Further, there was no direction by a police officer to disobey the instruction of the flashing yellow or amber light. Should you find that Plaintiff Virgil Burcham disobeyed the flashing yellow or amber light by proceeding into the intersection without caution, at an unreasonable speed, or by failing to maintain a careful lookout for other vehicles, such as that driven by Defendant Edward Miles, then Plaintiff Virgil Burcham is guilty of negligence.
If you believe that such negligence was the sole proximate cause of the accident and any injuries and damages Plaintiff claims to have sustained, then your verdict shall be for the Defendant. If you find that the negligence of Plaintiff was a proximate contributing cause of the accident and any damages and injuries, in arriving at your verdict, first determine that sum of money which will fairly and adequately compensate Plaintiff for said injuries and damages, and then assign Plaintiff a percentage of fault in proportion to the causal negligence of Plaintiff as provided in these instructions.
While instruction D-9 correctly stated the law, it lacked an evidentiary basis, as there was no evidence at trial that Burcham disobeyed the caution light. This issue is without merit.
*222 2. Failure to Yield
¶20. Similarly, the Miles estate criticizes the trial court for refusing instruction D-8R, which read:
You are instructed that the law of this State requires the driver of a vehicle to stop at the entrance to a through highway and yield the right-of-way to other vehicles which are approaching so closely on the through highway as to constitute an immediate hazard. However, once the driver has yielded at the intersection, he may proceed and the drivers of all other vehicles approaching the intersection on the through highway must yield the right-of-way to the vehicle proceeding into or across the through highway.
You are also instructed that the law of this state requires a driver of a vehicle to reduce his speed when approaching an intersection.
In this case, Plaintiff Virgil Burcham has alleged that Defendant Edward Miles, after stopping at the intersection of Highway 7 and Highway 72, entered the intersection of Highway 72, where Defendant’s vehicle was struck by a vehicle driven by Plaintiff Virgil Burcham. Should you find that Defendant Edward Miles stopped at the intersection and yielded the right of way as required, and that Plaintiff Virgil Burcham then failed to yield the right-of-way to Edward Miles, who was then entering the through highway, then you may find Plaintiff Virgil Burcham was negligent.
In addition, if you also find that Virgil Burcham did not reduce his speed has [sic] he approached the intersection of Highway 72 and Highway 7, then you may find that Plaintiff Virgil Burcham was negligent.
If you believe that such negligence was the sole proximate cause of the accident and any injuries and damages Plaintiff claims to have sustained, then your verdict shall be for the Defendant. If you find that the negligence of Plaintiff was a proximate contributing cause of the accident and any damages and injuries, in arriving at your verdict, first determine that sum of money which will fairly and adequately compensate Plaintiff for said injuries and damages, and then assign Plaintiff a percentage of fault in proportion to the causal negligence of Plaintiff as provided in these instructions.
Instruction D-8R correctly stated the law governing an intersection without a light or stop sign. However, it was undisputed at trial that Miles had a stop sign at the intersection where the accident occurred. Therefore, D-8R was not supported by the evidence and would have confused the jury. This issue is without merit.
3. Horn
¶ 21. Despite it being undisputed at trial that Burcham did not have time to sound his horn, the trial court gave instruction D-18, which stated:
You are instructed that the law of this State requires a driver of a motor vehicle, such as Plaintiff Virgil Burcham, to give audible warning with his horn when reasonably necessary to ensure safe operation. In this case, Plaintiff has testified that he did not give an audible warning with his horn before the accident at issue. Should you find that the use of Plaintiffs horn was reasonably necessary to ensure safe operation of his vehicle as he approached Mr. Miles’ vehicle, then Plaintiff Virgil Burcham is guilty of negligence.
If you believe that such negligence was the sole proximate cause of the accident and any injuries and damages Plaintiff claims to have sustained, then your verdict shall be for the Defendant.
*223 If you find that the negligence of Plaintiff was a proximate contributing cause of the accident and any damages and injuries, in arriving at your verdict, first determine that sum of money which will fairly and adequately compensate Plaintiff for said injuries and damages, and then assign Plaintiff a percentage of fault in proportion to the causal negligence of Plaintiff as provided in these instructions.
It was error to give instruction D-18, as it was not supported by the evidence. However, the error was harmless, as it clearly did not contribute to the verdict.[18]
¶ 22. Based on the portion of instruction D-18 italicized above, the Miles estate argues that it was entitled to, but not given, an instruction on assigning a percentage of fault. We agree that it is error to refer to an instruction that is not given, but, because we find no evidentiary support for instruction D-18, it should never have been given, and the error was harmless.
C. Accident Without Negligence
¶ 28. Finally, the Miles estate faults the trial court for refusing instructions D-2, D-5, and D-6. It argues that these instructions were necessary to inform the jury that an accident can occur without anybody being negligent. All three instructions addressed issues sufficiently covered by the trial court’s other instructions and were appropriately refused. This issue is without merit.
IV. Prior Accident
¶ 24. The Miles estate disputes the trial court’s exclusion of testimony from Officer Mathis regarding an accident Burcham had six months prior to his accident with Miles. The Miles estate sought to question Officer Mathis about the accident on two occasions. On each occasion, the trial court held a bench conference to determine the admissibility of the testimony. The first conference occurred following Burcham’s direct examination of Officer Mathis, and the trial court ruled that the questioning was premature.[19] The second conference occurred before the Miles estate called its first witness, and the trial court ruled that the questioning was an inappropriate attempt to impeach Burc-ham on a collateral matter. The Miles estate challenges the trial court’s second ruling.
¶ 25. A trial court’s admission or exclusion of testimony is reviewed for an abuse of discretion.[20] Impeachment on a collateral matter is prohibited and “a matter is collateral when it is not directly relevant to the issues in the case.”[21] The Miles estate claimed the testimony it sought was relevant and admissible based on a rule set out in Boyd v. State that
[T]he plaintiff may properly be cross examined as to his previous injuries, • physical condition, claims, or actions for injuries similar to that constituting the basis of the present action, for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was *224 caused, wholly or partially, by an earlier injury or pre-existing condition.[22]
However, no evidence was presented nor proffer made that Burcham was injured, physically or mentally, in his previous accident. As such, Officer Mathis’s testimony regarding Burcham’s previous accident was irrelevant, and it was not an abuse of discretion for the trial court to exclude it. This issue is without merit
V. Jury’s Verdict
¶ 26. The Miles estate also claims that the jury’s verdict is unsustainable and that a substantial remittitur is required.
Awards fixed by juries are not merely advisory and will ordinarily not be set aside except where so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable, and outrageous. Evidence of bias, passion, or prejudice on the jury’s part is an inference to be drawn from contrasting the amount of a verdict with the amount of damages.[23]
As previously discussed, we find that a remittitur in the amount of $1,080 is necessary to negate the submission to the jury of unrelated medical expenses. This re-mittitur will reduce Burcham’s judgment from $60,000 to $58,920. We find no evidence of bias, passion, or prejudice in the jury’s award, nor is it “beyond all measure, unreasonable, and outrageous” and we can affirm it, subject to acceptance of remitti-tur. If the remittitur is not accepted, a new trial on damages will be required.
VI. Post-Judgment Interest Rate
¶ 27. Lastly, the Miles estate argues that the six-percent post-judgment interest rate set by the trial court “is improperly punitive and far exceeds the scope and purpose of post-judgment interest.” We disagree. Mississippi had a statutory post-judgment interest rate of eight percent until 1989, when statutory amendments replaced the fixed rate with a requirement that the trial judge set a fair and reasonable rate.[24] Since 1989, many trial judges have continued to use an eight-percent interest rate, and this Court repeatedly has affirmed such orders.[25] This issue is without merit.
CONCLUSION
¶ 28. Miles negligently caused an accident when he pulled his pickup truck out in front of Burcham’s eighteen-wheel truck. As a participant in the accident, Burcham was entitled to recover emotional-distress damages and accident-related medical expenses. He was not entitled to recover medical expenses that were not accident-related. N on-accident-related medical expenses totaling $1,080 were submitted to the jury, necessitating an equivalent remittitur. Finding no other reversible error, we affirm the judgment of the Benton County Circuit Court if remittitur of $1,080 is accepted and entered within fifteen days from the date of issuance of this Court’s mandate. Otherwise, we reverse and remand this case for a new trial on damages only.
¶ 29. AFFIRMED ON CONDITION OF REMITTITUR; IF REMITTITUR REFUSED, REVERSED IN PART AND *225 REMANDED FOR A NEW TRIAL ON DAMAGES ONLY.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ.,'KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. The accident occurred at the intersection of Mississippi Highway 7 and U.S. Highway 72. Miles was driving northbound on Mississippi Highway 7. Burcham was driving eastbound on U.S. Highway 72.

. At the accident scene, Miles was in pain but exited his truck without assistance and retained consciousness. The responding officer did not consider the accident to be potentially fatal.

. According to Dr. Putnam, divertieulosis is a disease characterized by pockets in the colon wall.

. Burcham asked for $7,084.55 in medical expenses, $40,000 for past emotional distress, $8,000 for future emotional distress, and $5,000 for past physical pain, for a total damages request of $60,084.55.

. Entex, Inc. v. McGuire, 414 So.2d 437, 444 (Miss. 1982) (holding a plaintiff in a negligence case can recover only reasonably foreseeable damages).

. Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648, 658 (Miss. 1995).

. Entex, 414 So.2d at 444 (Miss.1982) (citing First Nat'l Bank v. Langley, 314 So.2d 324 (Miss. 1975), which abandoned the impact doctrine for emotional-distress claims, and adopting the reasonable foreseeability factors set out in Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968)).

. See U.S. Fid. & Guar. Co. v. Estate of Francis ex rel. Francis, 825 So.2d 38 (Miss.2002).

. Downs v. Ackerman, 115 So.3d 785, 790-91 (Miss.2013).

. See id.

. Id. at 49-50.

. Friends for All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816, 827 n. 15 (D.C.Cir.1984).

. Miss. Code Ann. § 11-1-55 (Rev.2002) (stating ''[t]he supreme court ... may ... affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds ... that the damages awarded were contrary to the overwhelming weight of credible evidence”).

. Daniels v. State, 107 So.3d 961, 963 (Miss. 2013) (internal quotations omitted).

. Neal v. State, 525 So.2d 1279, 1288 (Miss. 1987).

.Burcham also argues that D-15 conflicts with C-8. We disagree. C-8 provided the test for proximate cause stating:
An element or test of proximate cause is that an ordinarily prudent person should reasonably have forseen that some injury might probably occur as a result of his/her negligence. It is not necessary to foresee the particular injury, the particular manner of the injury or the extent of the injury.
D-15 addressed the separate issue of when emotional distress is reasonably foreseeable.

. The Miles estate’s reliance on Dupree v. Plantation Pointe, L.P., 881 So.2d 832 (Miss. Ct.App.2003), is misplaced, as it is a bystander case.

. See Snapp v. Harrison, 699 So.2d 567, 572 (Miss. 1997).

. The trial transcript indicates that a bench conference occurred at the end of Burcham’s direct examination. There is no record of the parties' arguments during the first bench conference, but the trial court's determination that the testimony was premature is referenced in the record of the parties' second bench conference.

. Kindred v. Columbus Country Club, Inc., 918 So.2d 1281, 1284 (Miss.2005).

. Lee v. State, 944 So.2d 35, 43 (Miss.2006).

. Boyd. v. Smith, 390 So.2d 994, 998 (Miss. 1980).

. Schoppe v. Applied Chemicals Div., Mobley Co., Inc., 418 So.2d 833, 836 (Miss.1982) (citations omitted).

. Bluewater Logistics, LLC v. Williford, 55 So.3d 148, 164 (Miss.2011).

. Id.