# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00910-COA

**ABIGAIL K. MURPHY**                                                                    **APPELLANT**

**v.**

**WILLIAM CAREY UNIVERSITY, DEAN JAMES**                          **APPELLEES**
**TURNER, AND DR. RICHARD MARGAITIS**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2018 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRADLEY S. CLANTON |
| | LAURA McKEE ZOUEIN |
| ATTORNEYS FOR APPELLEES: | HEBER S. SIMMONS III |
| | DORRANCE AULTMAN |
| | DORRANCE DEE AULTMAN JR. |
| | MATTHEW LEE HARRIS |
| | JESSICA LEIGH DILMORE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 08/11/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT**:

¶1.     This case is about a medical student's injuries following the administration of a sacral spring test. Abigail Murphy, a student of osteopathic medicine at William Carey University (William Carey), filed suit in the Forrest County Circuit Court against William Carey, Dean James Turner, and her faculty proctor, Dr. Richard Margaitis (collectively, the "Appellees"), alleging negligence, breach of contract, and negligent hiring, training, and/or supervision. After two years of discovery, the Appellees moved for summary judgment, contending there

were no genuine issues of material fact and that they were entitled to judgment as a matter of law. The circuit court granted the Appellees' motion for summary judgment on each claim and dismissed the action. On appeal, Murphy argues the circuit court erred. Because we find that there are genuine issues of material fact underlying Murphy's negligence claim, we reverse the circuit court's finding of summary judgment on that claim and remand this case for further proceedings consistent with this opinion. We affirm the circuit court's grant of summary judgment on Murphy's claims of breach of contract and negligent hiring, training and/or supervision.

### FACTS AND PROCEDURAL HISTORY

¶2. On April 2, 2013, Murphy and her classmates participated in a "Clinical Skills Assessment" (CSA), which included a practical and written examination. For the practical exam, Murphy was paired with fellow classmate Nate Bell and proctored by assistant professor Dr. Richard Margaitis. During the exam, Murphy and Bell took turns performing manual therapies on each other. At one point, Bell was assigned to assess Murphy for sacroiliac joint dysfunction. The assessment required Bell to perform a sacral spring test on Murphy's lumbosacral junction, or lower back.[1] Bell attempted to perform the test, but he was ultimately unable to perform the test to match a diagnosis. Dr. Margaitis then reviewed Bell's assessment and provided feedback. The feedback included Dr. Margaitis's re-administration of the sacral spring test on Murphy. After completing the test, Dr. Margaitis

---

[1] A sacral spring test is a diagnostic procedure relating to the sacrum or sacroiliac joint. It is performed by applying pressure to the lower back while the patient is in a prone position.

asked Murphy if she felt any pain in her lower back. Murphy responded, "No." Following the sacral spring test, Dr. Margaitis diagnosed Murphy with "left-on-left sacral torsion."[2] He then asked Bell to demonstrate the technique to treat left-on-left sacral torsion. Bell palpated Murphy's lower back, and the students concluded their practical exam.

¶3. After the practical exam, Murphy went home to study for the written portion of the CSA. After studying for an hour or two, Murphy started experiencing pain and swelling in her sacrum region. She treated the pain with ice packs and anti-inflammatory medication.

¶4. Two weeks after the CSA, Murphy approached Dr. Tanisha Hayes, another professor at William Carey, to report that she suffered from chronic back pain as result of the sacral spring test Dr. Margaitis had performed. Two weeks after approaching Dr. Hayes, Murphy also informed Dr. Margaitis of her back pain. In response, Dr. Margaitis offered to treat Murphy's pain on May 7, 2013.[3] After receiving Dr. Margaitis's treatment, Murphy sought additional treatment from Dr. Jones, the Chair of the Osteopathic Principals and Practice Department at William Carey. Dr. Jones treated Murphy on two occasions.[4]

¶5. Following those treatments, Murphy's lower back pain persisted. On May 12, 2013, Murphy visited the emergency room at the Wesley Medical Center in Hattiesburg,

---

[2] Dr. Margaitis testified at his deposition that left-on-left sacral torsion is "the most commonly found [somatic] dysfunction."

[3] Dr. Margaitis treated Murphy's lower back for "posterior innominate," "tightness [in the] lumbar spine," and "sacral torsion." According to Dr. Margaitis, Murphy's "sacrum was . . . twisted in a way that could have been causing her to have some discomfort."

[4] Murphy testified that Dr. Jones used a "skill technique" on her lower lumbar vertebra. She further testified that Dr. Jones treated her by performing a "Pubic Symphysis Muscle Energy Technique" and a "Counterstrain Technique."

Mississippi, in an attempt to determine the cause of her pain. The attending nurse assessed Murphy's condition, and Murphy was given an x-ray. Her x-ray results were "clean." Following the triage, the nurse concluded that Murphy suffered from "lumbago lower back strain and pain" and prescribed Murphy a muscle relaxer. The nurse also instructed Murphy to see a general practitioner if the pain did not subside. A few days later, Murphy visited Dr. Gary Carr, a general practitioner. Dr. Carr performed a nerve test to ensure Murphy could feel sensation. He also prescribed Murphy additional medication and instructed Murphy to start physical therapy if she felt no improvements. In June, physical therapists treated Murphy for sacroiliac joint pain. A few weeks after, Murphy moved back to Tennessee for summer break. In Tennessee, Murphy scheduled an appointment at Vanderbilt University, where she was referred to additional physical therapy. In the months that followed, Murphy visited various doctors and received an assortment of treatments and tests. The treatments were for sacroiliac joint pain.

¶6.     On July 10, 2015, Murphy filed a complaint in the Forrest County Circuit Court against William Carey, Dean Turner, and Dr. Margaitis. In the suit, Murphy claimed that (1) Dr. Margaitis "violated his duty of care when he negligently injured [Murphy], who was under his medical care"; (2) William Carey breached an implied contract; and (3) William Carey and Dean Turner committed negligence by failing to adequately train and supervise Dr. Margaitis. William Carey and Dean Turner filed separate answers and affirmative defenses on August 13, 2015. Dr. Margaitis filed his separate answer and affirmative defenses on August 21, 2015.

4

¶7.    On November 7, 2016, Murphy designated Dr. Gary Cole, a family medicine doctor, and Dr. Gerald Hesch, a physical therapist, as expert witnesses. Dr. Cole was designated to testify in regard to his treatment of Murphy, as well as the "actual and factual and proximate cause" of her injuries, and damages. Dr. Hesch was designated to testify to the same. On December 7, 2016, the Appellees designated Dr. Walter Ehrenfeuchter as an expert in the field of osteopathic manipulative medicine and Dr. John Kauffman as an expert in higher education administration.

¶8.    On March 17, 2017, the Appellees moved for summary judgment under Mississippi Rule of Civil Procedure 56, attaching eleven exhibits to the motion.[5] The Appellees argued that Murphy had failed to set forth genuine issues of material fact or provide expert testimony regarding Dr. Margaitis's performance of the sacral spring test; no contract existed between Murphy and William Carey; Murphy failed to provide genuine issues of material fact showing that Dr. Margaitis was negligently hired, trained, or supervised; and Murphy did not provide expert testimony regarding Murphy's financial losses. Murphy responded in opposition on April 12, 2017, incorporating the Appellees' exhibits and attaching affidavits from her designated expert witnesses.[6] In her response, Murphy replied that no expert

_____

[5] The exhibits included: (1) the complaint; (2) the Appellees' separate answers and defenses; (3) William Carey's Responses to Murphy's Requests for Production of Documents, which contained numerous school-related documents pertaining to Murphy; (4) William Carey's College of Osteopathic Medicine Registration Form; (5) Murphy's deposition transcript; (6) Dr. Margaitis's deposition transcript; (7) Dr. Narendra Singh's deposition transcript; (8) Dr. Margaitis's resume; (9) Murphy's designation of expert witnesses; (10) Dr. Kauffman's affidavit; and (11) Dr. Kauffman's curriculum vitae.

[6] The additional exhibits included (1) Dr. Cole's affidavit and curriculum vitae and (2) Dr. Hesch's affidavit and curriculum vitae.

testimony had been offered regarding causation because Murphy's experts had not been deposed by the defendants (Murphy had attached affidavits to the response.); an implied contract existed between Murphy and William Carey; Dr. Margaitis was not adequately trained or supervised; and she was not required to designate an expert to testify about her financial losses.

¶9. On December 6, 2017, the Appellees filed a supplemental motion for summary judgment, claiming that Murphy's claims were time-barred under Mississippi Code Annotated section 15-1-36 (Rev. 2012). On the same day, Murphy moved for an adverse-inference instruction due to spoliation because the Appellees failed to preserve and search for electronically stored information. Murphy's motion also requested sanctions for the alleged spoliation of evidence. The Appellees filed a consolidated response opposing both the adverse-inference instruction and the claim for sanctions.

¶10. The circuit court held a motions hearing on December 15, 2017. After the hearing, the circuit court executed an order granting the Appellees' March 17 motion for summary judgment. In the order, the court held that there was insufficient expert testimony to establish a prima facie case for negligence or breach of contract and that Murphy failed to "provide responsive evidence" that Dr. Margaitis was negligently trained or supervised. The court also denied the Appellees' supplemental motion for summary judgment, Murphy's motion for the adverse-inference instruction, and Murphy's claim for sanctions.

¶11. It is from the circuit court's summary judgment order that Murphy now appeals. On appeal, Murphy raises the following issues: (1) whether the circuit court erred by granting

summary judgment on Murphy's negligence claim; (2) whether the circuit court erred by granting summary judgment on Murphy's breach-of-contract claim; (3) whether the circuit court erred by granting summary judgment on Murphy's negligent hiring, training, and/or supervision claim; and (4) whether the circuit court erred by denying Murphy's motion for the adverse-inference instruction.

## STANDARD OF REVIEW

¶12.    We review a trial court's decision granting or denying summary judgment de novo. *Robinson v. Holmes County*, 284 So. 3d 730, 732 (¶7) (Miss. 2019).  "Summary judgment is proper only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Owen v. Pringle*, 621 So. 2d 668, 670 (Miss. 1993).  To determine whether there is a genuine issue of material fact, we will review "all admissions, answers to interrogatories, depositions, affidavits, any other evidence, viewing the evidence in a light most favorable to the non-movant[,]" in this case, Murphy. *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 395 (¶22) (Miss. 2018) (internal quotation marks omitted); *see also* M.R.C.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

## DISCUSSION

¶13.    Murphy argues the circuit court erred by granting summary judgment on each of her three claims.  We review each claim, in turn.  We then discuss whether the circuit court erred

7

by denying Murphy's motion for the adverse-inference instruction regarding spoliation.

**I.      Whether the circuit court erred by finding there were no genuine issues of material fact as to Murphy's claim for negligence.**

¶14.    Before we discuss the merits of Murphy's claim, we address a preliminary matter the parties dispute.

*A.      Murphy's negligence claim sounds in medical malpractice.*

¶15.    The parties dispute whether Murphy's negligence claim sounds in ordinary negligence or medical malpractice.  Murphy argues that Dr. Margaitis's acts fall within the standard of reasonable care incumbent on an ordinary person.  The Appellees disagree and argue that Murphy's negligence claim is for medical malpractice under Mississippi Code Annotated section 15-1-36(2).  It appears the circuit court reviewed Murphy's claim under a medical-malpractice standard.  The language of Murphy's complaint also refers to Dr. Margaitis's actions as "medical care."  In its order granting the Appellees' motion for summary judgment, the circuit court outlines the general rule applicable to medical-malpractice suits and cites to medical-malpractice caselaw, such as the familiar case *Hubbard v. Wansley*, 954 So. 2d 951 (Miss. 2007).  We acknowledge that the circuit court cites to *Martin v. St. Dominic-Jackson Mem'l Hosp.*, 90 So. 3d 43, 48 (¶13) (Miss. 2012), a slip-and-fall case that applied an ordinary-negligence standard for the proposition that a defendant's negligence must be the proximate cause of the plaintiff's injury.  *Id*. at 50 (¶21) ("This is not a case of medical malpractice but a slip and fall.") (Lamar, J. dissenting).  Nevertheless, we find that Murphy's claim sounds in medical malpractice.

¶16.    We find no case delineating the standard of care for the performance of a test to a

student in a clinical-teaching situation. We therefore seek guidance elsewhere. Mississippi Code Annotated section 15-1-36 is the medical-malpractice statute of limitations. It provides in relevant part that

> no claim in tort may be brought against a licensed physician, osteopath . . . for injuries . . . arising out of the course of medical, surgical or other professional services unless it is filed within (2) years from the date the alleged act, omission, or neglect shall or with reasonable diligence might have first been known or discovered.

Miss. Code Ann. § 15-1-36(2).

¶17. In determining the nature of Murphy's claim, the Mississippi Supreme Court has explained that section 15-1-36(2) applies to "injuries . . . arising out of the course of medical, surgical or other professional services." *Croswaith v. S. Health Corp. of Houston Inc.*, 94 So. 3d 1070, 1074 (¶13) (Miss. 2012) (quoting Miss. Code Ann. § 15-1-36(1) (Rev. 2003)). Our supreme court has also recognized that "medical or professional services . . . include all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge." *Wolfe v. Delta Discount Drugs Inc.*, 291 So. 3d 339, 342 (¶13) (Miss. 2020) (internal quotation marks omitted). In *Bell v. West Harrison County District*, 523 So. 2d 1031, 1033 (Miss. 1988), the court stated that "medical or professional services" are not limited to strictly surgeries, procedures, prescriptions, and medications; they include all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge.

¶18. Here, Murphy's complaint alleges that she was injured while under Dr. Margaitis's medical care. Both Murphy and Dr. Margaitis testified at their depositions that Dr. Margaitis

9

evaluated Murphy for sacroiliac joint pain and rendered treatment to Murphy. Therefore, we agree with the circuit court and find that Murphy's injuries arose out of the course of professional services that are performed by a licensed physician. Although Murphy and Dr. Margaitis shared a student-teacher relationship, rather than a doctor-patient relationship, Dr. Margaitis depended on his specialized knowledge and skill to render the sacral spring test to Murphy.

> B. *The circuit court erred by granting summary judgment on Murphy's medical-malpractice claim.*

¶19.    Now turning to the circuit court's holding that summary judgment was appropriate, we hold that Murphy's affidavits set forth probative evidence that create genuine issues of material fact, and because the affidavits were not excluded, they were enough to overcome a finding of summary judgment at this point in the litigation. "A plaintiff in a medical malpractice case has the burden to prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the require standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." *Phillips v. Delta Reg'l Med. Ctr.*, 290 So. 3d 386, 393 (¶29) (Miss. Ct. App. 2020) (internal quotation mark omitted) (quoting *Johnson v. Pace*, 122 So. 3d 66, 68 (¶8) (Miss. 2013)); *see also Cavalier v. Mem'l Hosp. at Gulfport*, 253 So. 3d 288, 291-92 (¶12) (Miss. 2018). "Expert testimony establishing these elements is generally required for the nonmoving party to survive summary judgment." *Phillips*, 290 So. 3d at 393 (¶29) (quoting *Johnson*, 122 So. 3d at 68 (¶8)).

¶20.    Prior to a trial, the circuit court granted the Appellees' motion for summary judgment,

10

finding the following:

> "[P]roximate cause requires more than speculation, guesswork, conjecture, or inferences. The law requires probability, not an assumption that the test proximately caused back pain. In this court's view, neither Dr. Hesch nor Dr. Cole's opinion "equate[s] to an opinion of sufficient certainty for a jury to draw a conclusion." *Martin*, 90 So. 3d at 49 (¶16). Consequently, even if a breach of the applicable standard of care could be shown, the impediment to the plaintiff's surviving summary judgment in this case is the lack of expert testimony sufficient to establish the causation element of her claim. There being therefore no expert opinion testimony sufficient to establish a *prima facie* case of negligence against Dr. Margaitis, he is entitled to summary judgment on that claim. *See generally Hubbard v. Wansley*, 954 So. 2d 951 (¶¶42, 50) (Miss. 2007) (affirming summary judgment on malpractice claim for a failure of proof on an essential element of the claim).

(Footnotes omitted).

¶21. The circuit court cited *Hubbard v. Wansley*, 954 So. 2d 951, 964 (¶42) (Miss. 2007), as support for its determination that Dr. Cole's and Dr. Hesch's affidavits were conclusory and, thus, unable to create a genuine issue of material fact to defeat summary judgment. In *Hubbard*, the plaintiff sued Dr. Wansley for medical malpractice after she fell and hit her head while under his supervision at a hospital. *Id.* at 954 (¶2). Following the fall, Dr. Wansley ordered nurses to observe the plaintiff until she was discharged from the hospital later that day. *Id.* at 954-55 (¶2). The plaintiff was eventually readmitted to the hospital due to neurological issues, and she again received care from Dr. Wansley. *Id.* at 955 (¶3). Dr. Wansley referred the plaintiff to a neurologist, who recommended that the plaintiff undergo surgery to repair damage done during her fall. *Id.* at (¶4).

¶22. Dr. Stringer, one of the plaintiff's medical experts, provided deposition testimony and two affidavits in support of the plaintiff's claim that her medical condition would have been

11

improved if Dr. Wansley had referred her to a neurologist sooner (or provided "aggressive emergency care"). *Id.* at 964 (¶45). At the deposition, Dr. Stringer testified specifically to causation. *Id.* at 965 (¶46). There, Dr. Stringer was asked whether there was a "reasonable medical probability" that the plaintiff would have experienced "substantial improvement in her condition" had the treating physician administered "aggressive emergency care." *Id.* Dr. Stringer responded, stating, "I think that would be extremely difficult to answer. I mean, I've already testified to the fact that it would—that she was not given that opportunity. *And so by not being given an opportunity, I guess we'll never know.*" *Id.* (emphasis added).

¶23. After the deposition, Dr. Stringer issued an affidavit that differed greatly on this issue. *Id.* at (¶47). Therein, he asserted, "[I]t is my opinion that had [the plaintiff] been treated properly by Dr. Wansley, or if Dr. Wansley had notified appropriate personnel, it is my opinion that [the plaintiff] would have had a greater than fifty percent chance of reduced neurological injury." *Id.* Dr. Stringer offered no medical facts or authority to support his reasons for changing his opinion. *Id.* The supreme court rejected Dr. Stringer's assertions, finding that it was "conclusory" and contradictory to his deposition testimony. *Id.* at (¶48).

¶24. We disagree with the Appellees and the circuit court that this case is substantially similar to *Hubbard*. First, Dr. Cole's and Dr. Hesch's affidavits do not contradict prior testimony. There were no prior depositions taken in this case. Second, Dr. Cole's affidavit provides testimony showing how Dr. Margaitis rendered care below the requisite standard. Third, Dr. Cole, who, like Dr. Margaitis, is an osteopathic medicine doctor and concluded that it was his expert opinion that Murphy's back injury was the result of Dr. Margaitis's

"negligent and careless administration of a sacral 'spring' test."

¶25. In medical-malpractice cases, the physician owes the patient the duty to adhere to an objective standard of care. *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (¶9) (Miss. 2011) ("The expert must articulate an objective standard of care."). In his affidavit, Dr. Cole outlines the requisite standard for performing a sacral spring test:

> The physician must apply gentle anterior/forward pressure while conducting the procedure, must administer the spring test to the correct location, and must carefully monitor the feedback or information they receive from the patient's body and adjust accordingly. The patient is positioned lying face down, also known as the prone position, on the table during the completion of the sacral spring test. Furthermore, the exact anatomical location where the procedure is performed is at the lumbosacral junction.
>
> . . . .
>
> The amount of force required to perform the Sacral Spring Test and interpret the response is minimal. The pressure needed to remove any soft tissue laxity and that is first applied to the lumbosacral junction is approximately 2 pounds. Once the initial laxity of the soft tissue is moved through, the pressure required to induce "spring" is another 2 to 3 pounds. This results in a maximum of up to 5 pounds of total applied pressure. The force of the spring test is accomplished in a quick motion to see if "spring" is present or not. The result of the sacral base having a little "spring" or "give" is considered normal. If there is no spring or give it feels "stiff as a board," then that is not normal and is indicative of dysfunctional sacral motion.
>
> When conducting the spring test, the physician needs to attentively monitor the response exhibited by the ability of the sacral base to move forward or not.
>
> . . . .
>
> Another element to incorporate with the spring test is the timing of the procedure with the respiration cycle of the patient.
>
> . . . .
>
> Since the sacral spring test is an assessment of sacral motion, it should also

factor in the sacral movement that inherently occurs during the breathing cycle. The physician should be focused on the patient's breathing mechanics as they gently administer the spring test's posterior-to-anterior thrust. Furthermore, the physician would want to time the delivery of their force to occur at the end of expiration. . . . If the timing is off and the doctor is pushing anteriorly while the sacral base is trying to move posteriorly, then it will result in a false test result. Not only would the doctor receive a false test result, but they would potentially increase the odds of patient injury.

We note that Dr. Cole's standard of care is essentially the same standard Dr. Margaitis gave at his deposition.

¶26. In addition to providing a requisite standard of care, "the expert must also establish that the failure [to follow the standard] was the proximate cause, or proximate contributing cause, of the alleged injuries." *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992). The separate opinion argues that Dr. Cole's assertions were "insufficient to establish causation" because "no real facts" were given to "back . . . up" his conclusion. *Post* at (¶49). But Dr. Cole's affidavit contains opinions explaining *how* and *why* Dr. Margaitis's performance fell below the requisite standard of care. For example, Dr. Cole explains that Murphy's lower back injury could have occurred as a result of "[a]n inaccurate directional force . . . applied to the sacrum." He also opines that Dr. Margaitis may have applied a "torsional type of thrust" instead of a "direct posterior-to-anterior thrust" to Murphy's lower back. Dr. Cole also states that Dr. Margaitis may have applied too much force to Murphy's sacrum region and miscalculated the timing of the delivery of that force.

¶27. Similarly, Dr. Hesch's affidavit provides, "The common thread in [Murphy's] presentation is that of continued but variable sacroiliac joint dysfunction and lumbosacral joint dysfunction impacting activities of daily living." He continues, "The forceful spring

14

test appears to be causative to the initial symptoms and to her ongoing pain syndrom and protracted disability which impacts function such as prolonged sitting and standing." In a footnote, the separate opinion acknowledges that Dr. Hesch is not a medical doctor and, as such, would be unable to offer causation testimony at trial. *Post* at n.8. But this argument is premature, as the instant case is in an adolescent stage. It is not the role of this Court to assume the role of the trial court but to address the issue on appeal. That issue is whether there is a genuine issue of material fact. *See Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented."). Because we find genuine issues of material fact exist in this case, we do not reach, and express no view upon, the issue of whether Dr. Hesch is qualified to present causative testimony.

¶28. The separate opinion points out that no abnormal findings of an injury were included in Murphy's radiological reports. *Post* at (¶47). While this is true, the record also shows that Dr. Singh, like Dr. Cole, administered different courses of treatment to Murphy for sacroiliitis and sacroiliac joint dysfunction, including injections, fluoroscopy, physical therapy, osteopathic manipulations, and manual physical therapy. It is undisputed that Murphy was hurt.

¶29. In sum, Murphy provided probative evidence to defeat summary judgment. In opposition to the Appellees' motion for summary judgment, Murphy responded by attaching affidavits from Dr. Cole and Dr. Hesch. These affidavits carried Murphy's burden of establishing a prima face case for medical malpractice and conflicted with the Appellees'

argument that Dr. Margaitis complied with the requisite standard of care at the time he performed the sacral spring test. In particular, we find genuine issues of fact exist regarding whether Dr. Margaitis (1) applied an inaccurate direction force to Murphy's sacrum region; (2) applied too much force to the sacrum; and (3) miscalculated the delivery of force needed to perform the test. These issues are enough for a jury—the finder of fact—to decide. "Summary judgment is not to be used as a means of depriving a litigant of a full trial on genuine fact issues." *Dethlefs v. Beau Masion Dev. Corp.*, 458 So. 2d 714, 716 (Miss. 1984). Genuine issues of material fact remain in the case as it is before us. Therefore, we hold that the circuit court's decision to grant summary judgment to the Appellees on this issue was based on the erroneous conclusion that Murphy failed to meet her burden in response to the motion for summary judgment.

¶30. The Appellees also argue that Dr. Cole and Dr. Hesch's expert testimony were inconsistent with Murphy's pretrial disclosures under Mississippi Rule of Civil Procedure 26(b)(4).[7] Because of this, the Appellees request this Court to disregard their affidavits. Rule 26(b)(4) states in relevant part:

> Discovery of facts known and opinions held by experts, otherwise discoverable under subsection (b)(1) of this rule may be obtained only as follows:
>
> > (A)(i) A requesting party may, through interrogatories, require any other party to identify any witness whom the responding party expects to call as a witness at trial to present evidence under Mississippi Rule of Evidence 702, 703, or 705.

---

[7] We note that the Appellees' Brief references an old version of Rule 26(b)(4). While this Court cites to the current version of the rule, the changes do not affect the analysis herein.

(A)(ii) If such witness has been retained or specially employed to provide expert testimony, the requesting party may, through interrogatories, require the responding party to state the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the facts or data considered by the witness in forming the opinions, regardless of when and how the facts or data were made known to the witness; any exhibits that will be used to summarize or support the opinions; the witness's qualifications, including a list of all publications authored by the witness in the previous ten years; a list of cases in which, during the previous ten years, the witness testified as an expert at trial or by deposition; and, for retained experts, a statement of the compensation to be paid for the study and testimony in the case.

¶31. The standard of review to determine whether the circuit court erred by permitting expert testimony is an abuse of discretion. *Kronfol v. Johnson*, 283 So. 3d 1162, 1173 (¶22) (Miss. Ct. App. 2019), *cert. denied*, 283 So. 3d 733 (Miss. 2019). The Appellees contend that Murphy failed to include "every fact and every opinion" of her expert witnesses in her pretrial disclosures. The Appellees also argue that Dr. Hesch, as a physical therapist, is not permitted to offer opinions regarding proximate causation. However, the record indicates that the Appellees failed to submit a motion to exclude Dr. Cole or Dr. Hesch as expert witnesses. The Appellees' summary judgment motion also makes no mention of a discovery violation under Rule 26(b)(4). Because the circuit court has neither considered nor ruled upon such a motion, the Appellees cannot, at this time, request this Court to discredit Murphy's expert witnesses' opinions. This issue is premature and not ripe for review.

¶32. The circuit court found that "neither Dr. Hesch nor Dr. Cole's opinion 'equate[s] to an opinion of sufficient certainty for a jury to draw a conclusion.'" (Quoting *Martin v. St. Dominic-Jackson Mem'l Hosp.*, 90 So. 3d 43, 49 (¶16) (Miss. 2012)). We disagree and

17

conclude that Murphy offered evidence that could establish a causal connection between her alleged lower back injury and Dr. Margaitis's alleged deviation from the standard of care. We also conclude that the Appellees' Rule 26(b)(4) argument is not ripe for review. Therefore, we reverse and remand this claim back to the circuit court for further proceedings.

## II. Whether the circuit court erred by granting summary judgment on Murphy's breach-of-contract claim.

¶33. Turning to Murphy's non-tort claim, the circuit court correctly held that Murphy's contract claim failed as a matter of law because Murphy's allegations were insufficient to develop a basis for a breach of contract. "Under Mississippi law, a plaintiff asserting any breach-of-contract claim has the burden to prove by a preponderance of the evidence (1) that a valid and binding contract exists; and (2) that the defendant has broken or breached it without regard to the remedy sought or the actual damage sustained." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 527 (¶27) (Miss. 2019) (citing *Bus. Commc'ns Inc. v. Banks*, 90 So. 3d 1221, 1225 (¶11) (Miss. 2012), *overruling Warwick v. Matheny*, 603 So. 2d 330 (Miss. 1992)).

¶34. The parties do not dispute that a contract existed between William Carey and Murphy. As the Mississippi Supreme Court stated in *University of Mississippi Medical Center v. Hughes*, 765 So. 2d 528, 535 (¶23) (Miss. 2000), "[i]t is the conclusion of this court, in keeping with the law of sister jurisdictions, that . . . the student-university relationship is contractual in nature[.]" The *Hughes* court found "that terms of the contract may be derived from a student handbook, catalog, or other statement of university policy." *Id.* at 534 (¶20). The court further noted that "[a] strict view of contract law . . . is rejected." *Id.* 535 (¶23).

18

¶35. Murphy alleges that William Carey breached its implied contract at the time Dr. Margaitis's actions injured Murphy. But apart from this assertion, Murphy's one-page argument goes no further in explaining to this Court how the alleged injury breaches a term of the implied contract. Because Murphy has not sufficiently shown what term of the implied contract was breached, we conclude that Murphy's breach-of-contract claim fails as a matter of law; nor has Murphy shown a genuine issue of material fact regarding this claim. The Appellees were entitled to judgment as a matter of law. This issue is without merit.

### III. Whether the circuit court erred by granting summary judgment on Murphy's negligent hiring, training, and/or supervision claim.

¶36. Murphy alleges that William Carey and Dean Turner negligently hired, trained, and/or supervised Dr. Margaitis. In Mississippi, "an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." *Backstrom v. Briar Hill Baptist Church Inc.*, 184 So. 3d 323, 327 (¶12) (Miss. Ct. App. 2016) (quoting *Parmenter v. J & B Enters. Inc.*, 99 So. 213, 217 (¶18) (Miss. Ct. App. 2012)). "[A] plaintiff must prove the defendant had either actual or constructive knowledge of an employee's incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party." *Id.* (quoting *Doe ex rel. Brown v. Pontotoc Cty. Sch. Dist.*, 957 So. 2d 410, 417 (¶16) (Miss. Ct. App. 2007)).

¶37. After our review of the record and applicable caselaw, we find that Murphy failed to set forth probative evidence showing that William Carey or Dean Turner negligently hired, supervised, and/or trained Dr. Margaitis. In the motion for summary judgment, the Appellees

19

attached an affidavit from Dr. Kauffman, a licensed doctor of osteopathic medicine, asserting that Dr. Margaitis was qualified at the time he was hired and that Dean Turner and William Carey acted reasonably in supervising and training Dr. Margaitis. The record further shows that Murphy set forth no evidence to refute Dr. Kauffman's assertions. M.R.C.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts that there is a genuine issue for trial. If he does not respond, summary judgment, if so appropriate, shall be entered against him.").

¶38. On appeal, Murphy alleges that the Appellees failed to produce any evidence that Dr. Margaitis was supervised and trained. But such claim improperly shifts the burden from Murphy to the Appellees. *See Karpinsky v. American Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶13) (Miss. 2013) ("We reiterate and clarify that, while Defendants carry the initial burden of *persuading* the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, [the non-moving party] carries the burden of *producing* sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial."). Consequently, we agree with the circuit court that Murphy's failure to provide response evidence to the Appellees' assertion disposes of this claim on summary judgment. This issue is without merit.

**IV. Whether the circuit court erred by denying Murphy's motion for the adverse-inference instruction based on spoliation**.

¶39.   As a final matter, Murphy argues the circuit court erred by denying her motion for an adverse-inference instruction based on spoliation because the Appellees failed to preserve and search for electronically stored information.  She now urges this Court to "grant an adverse inference instruction to the jury."

¶40.   This exact issue was raised concerning a jury trial and dismissed in *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 73 (¶¶14-16) (Miss. 2019).  In *Atkinson*, our supreme court delineated the following:

> "Jury instructions are to be granted only where evidence has been presented which supports the instruction."  *DeLaughter v. Lawrence Cty. Hosp.*, 601 So.2d 818, 824 (Miss. 1992).  The *jury* must hear the evidence at trial for the jury instruction to be proper.  "Therefore, evidence or argument from a pretrial hearing is not a basis for a spoliation instruction."  *Teal v. Jones*, 222 So.3d 1052, 1059 (Miss. Ct. App. 2017).  Evidence regarding the circumstances surrounding the missing evidence must be presented at trial so the jury may determine the significance.  *Id.*  This Court has also held that "the explanation for the original record's absence may be fully satisfying either that it was lost through no fault of the [party], that the [party] deliberately destroyed it, or as in most cases, somewhere in between, *thereby making it a jury issue*."  *DeLaughter*, 601 So. 2d at 821 (emphasis added).  When the evidence falls within the "in between" range, "the instruction should require the jury to first determine whether reasonable explanation for the loss of the missing original [evidence] has been presented . . . ."  *Id.* at 822.  If the jury determines that no reasonable explanation for the loss has been presented, it may then infer that the evidence would have been unfavorable to the party responsible for the loss.  *Id.*

*Id.* at (¶15).

¶41.   Under the guidance of *Atkinson*, we conclude that it would be premature and inappropriate for us to mandate that the circuit court give a spoliation instruction at trial because this case was disposed *prior* to trial.  Because of this, the circuit court does not know what evidence regarding spoliation will be presented to the jury.  We also cannot say whether

21

the evidence will support or oppose the spoliation instruction. Notwithstanding, if the evidence presented at trial reveals that certain electronically stored information was intentionally or negligently lost, then Murphy may move for a spoliation jury instruction. *See Renner v. Retzer Rescs. Inc.*, 236 So. 3d 810, 816 (¶23) (Miss. 2017).

## CONCLUSION

¶42. For the forgoing reasons, this Court affirms the circuit court's decision regarding Murphy's breach-of-contract and negligent hiring, training, and/or supervision claims because the Appellees were entitled to judgment as a matter of law. This Court reverses the circuit court's summary judgment finding as to Murphy's medical-malpractice claim and remands this case to the Forrest County Circuit Court for further proceedings.

¶43. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶44. I concur that the circuit court correctly granted the defendants' motion for summary judgment on Murphy's claims for breach of contract and negligent supervision. I dissent in part because Murphy failed to show that there is a genuine dispute of material fact on the issue of proximate causation. Therefore, the circuit court also correctly granted the defendants' motion for summary judgment on Murphy's negligence claim.

¶45. "A prima facie case for medical malpractice must be made by proving the following elements: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to

22

conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." *Hubbard v. Wansley*, 954 So. 2d 951, 956-57 (¶12) (Miss. 2007). "When proving these elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id.* at 957 (¶12) (quoting *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)).

¶46.　In opposition to summary judgment, Murphy submitted the affidavit of Dr. Gary Cole, "a licensed doctor of osteopathic medicine with board certification in Family Medicine and Osteopathic Manipulative Medicine." On the issue of causation, Dr. Cole stated:

> My professional medical opinion is that Abigail's injury is the direct result of [Margaitis's] negligent usage of the sacral spring test. I think her injury most likely occurred [because Margaitis applied force in an inaccurate direction, applied too much force, and/or applied force at the wrong time].
>
> . . . .
>
> The numerous ways that the spring test can be incompetently administered are preventable if the physician exercises good judgement and adheres to the guidelines set by the osteopathic medical community.
>
> . . . . The direct cause of her injury is unquestionably evident. . . .
>
> Did [Margaitis] cause the debilitating injury? Yes. It my medical opinion that [Margaitis] negligently administered the sacral spring test and that negligent administration was a cause in fact and a proximate cause of Abigail Murphy's back injury. Abigail felt excessive force being applied to her back during [Margaitis's] spring test. Additionally, Abigail experienced pain within two hours after [Margaitis's] careless spring test. The onset of and registering of pain that she experienced is a typical occurrence with injuries. It is not uncommon for injured victims in an automobile crash to feel fine at the scene of an accident, only to experience severe whiplash repercussion injuries of neck and back pain 2 or more hours later. A focused force directed by an

23

osteopathic physician or a martial arts expert can have the same consequences, whether intentional or not. . . .

Further support of this finding is that Ms. Murphy's back had no apparent problems before the procedure and has been in chronic pain and impaired mobility ever since the test was performed.

¶47. Cole's affidavit does not describe the nature of Murphy's "injury" other than as "sacroiliac joint pain and low back pain." Nor does Cole identify the physical or medical cause of Murphy's pain. In addition, there are no abnormal findings or objective findings of an injury in any of Murphy's radiological reports.

¶48. Cole's "post hoc ergo propter hoc" opinion is insufficient to establish proximate causation. The substance of Cole's opinion on causation is that Murphy began experiencing pain about two hours after the sacral spring test and, therefore, something Margaitis did wrong during the test must have caused the pain. However, our Supreme Court has "repeatedly held post hoc ergo propter hoc (after this consequently by reason of this) is a misplaced argument in modern tort law" and an insufficient basis for establishing proximate causation. *Herrington v. Leaf River Forest Prods. Inc.*, 733 So. 2d 774, 779 (¶15) (Miss. 1999). "It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence." *Id.* (quoting *Kramer Serv. Inc. v. Wilkins*, 184 Miss. 483, 497, 186 So. 625, 627 (1939)). A mere temporal relationship between alleged medical negligence and a later report of pain is insufficient to support a finding of proximate causation.

¶49. Moreover, Cole's opinion is insufficient to establish causation because "it is given with no real facts to back it up." *Hubbard*, 954 So. 2d at 965 (¶48). As this Court has held,

24

a "conclusory" expert affidavit that fails to explain "how or why" an injury occurred "is insufficient to prove causation." *Perez v. Univ. of Miss. Med. Ctr.*, 75 So. 3d 609, 612 (¶16) (Miss. Ct. App. 2011). Cole asserts that Margaitis "most likely" breached the standard of care in one or more of three different ways and that Margaitis's alleged negligence caused "joint and lower back pain." However, Cole does not identify the underlying injury or cause of the pain. There is nothing in his affidavit to explain the "how or why" of the link between the alleged negligence and Murphy's complaints of pain.

¶50. The affidavit of Dr. Jerry Hesch, a physical therapist, also fails to create a genuine issue of material fact on the issue of causation. Hesch's affidavit simply asserts that "the forceful spring test appears to be causative to [Murphy's] initial symptoms and ongoing pain." Hesch does not even identify the alleged negligence, and he provides no explanation whatsoever for his opinion. Therefore, Hesch's affidavit is also insufficient to create a genuine issue of material fact for the same reasons discussed above.[8]

¶51. Moreover, Hesch's opinion is not stated in terms of a reasonable medical certainty or reasonable medical probability. He just states, without elaboration, what "appears" to him to be the cause of Murphy's pain. While no exact language is required, an expert's opinion

---

[8] Hesch is not a medical doctor. It is doubtful that a physical therapist is competent to offer such a causation opinion. *Cf. Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (¶20) (Miss. 2009) (holding that "nurses cannot testify as to medical causation" "because nurses are not qualified to make medical diagnoses or attest to the causes of illnesses"); *see also* Miss. Code Ann. § 73-23-35(3) (Rev. 2017) (providing, with limited exceptions, that a physical therapist "shall not perform physical therapy services without a prescription or referral from a person licensed as a physician, dentist, osteopath, podiatrist, chiropractor, physician assistant or nurse practitioner"). However, regardless of his qualifications, Hesch's conclusory opinion is insufficient to create a triable issue of fact.

on causation cannot support a jury verdict unless it is based on a "reasonable degree of medial certainty" or a "reasonable degree of medical probability." *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1203 (¶¶20-23) (Miss. 2012); *Martin v. St. Dominic-Jackson Mem'l Hosp.*, 90 So. 3d 43, 48-50 (¶¶14-19) (Miss. 2012); *Cates v. Woods*, 169 So. 3d 902, 907 (¶13) (Miss. Ct. App. 2014). Hesch's unsupported opinion fails to meet this standard as well.

¶52. The circuit court correctly held that Murphy failed to create a genuine dispute of material fact on the issue of proximate causation. Therefore, the circuit court's order granting summary judgment should be affirmed as to all of Murphy's claims. I respectfully concur in part and dissent in part.

**BARNES, C.J., JOINS THIS OPINION.**